## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| BOSSEN ARCHITECTURAL MILLWORK, INC. and JOSEPH BOSSEN,<br><br>Plaintiffs,<br><br>-v.-<br><br>KOBOLAK & SONS, INC. and TIBOR KOBOLAK,<br><br>Defendants. | DOCKET NO.:<br><br>Civil Action<br><br>**VERIFIED COMPLAINT** |

Plaintiffs, Bossen Architectural Millwork, Inc. and Joseph Bossen (collectively, "Plaintiffs"), by way of Verified Complaint against Defendants, Kobolak & Sons, Inc. and Tibor Kobolak (collectively, "Defendants"), assert as follows:

## PARTIES

1.     Plaintiff, Bossen Architectural Millwork, Inc. ("BAM"), is a corporation organized and existing under the laws of the State of New Jersey, having its place of business located at 1818 Bannard Street, Cinnaminson, New Jersey 08077.

2.      Plaintiff, Joseph Bossen ("Bossen"), is a resident of the State of New Jersey and principle of BAM, having an address at 1818 Bannard Street, Cinnaminson, New Jersey 08077.

3.      Upon information and belief, and at all times relevant, Defendant, Kobolak & Sons, Inc., ("K&S"), was and is a New Jersey corporation having its place of business located at 1818 Bannard Street, Cinnaminson, New Jersey 08077.

4.      Upon information and belief, and at all times relevant, Defendant, Tibor Kobolak ("Kobolak"), was and is an adult individual and resident of the State of New Jersey having an address at 1818 Bannard Street, Cinnaminson, New Jersey 08077.

<u>**JURISDICTION**</u>

5.      This court has subject matter jurisdiction under 28 U.S.C.A. §1331, as the Plaintiffs' claims involve the federal question of trademark infringement.  This court also has supplemental jurisdiction under 28 U.S.C.A. §1367(a) as the additional claims asserted in this Complaint against Defendants are so intricately related to the federal question claims that they form a part of the same case or controversy.

**A. The Merger Agreement and Breaches**

6.      On or about February 6, 1986, Bossen and his brother, John P. Bossen, formed the Joseph H. Bossen and John P. Bossen General Partnership

("General Partnership") under the laws of the State of New Jersey. The only asset of the General Partnership was and is the real property located at 1818 Bannard Street, Cinnaminson, Burlington County, New Jersey designated as Lot 2, Block 505 on the municipal tax map of the Township of Cinnaminson, Burlington County, New Jersey ("Property").

7.      On or about February 24, 2006, Bossen and Kobolak memorialized and executed a letter of intent wherein the parties agreed that (a) BAM, a New Jersey corporation which was then one hundred percent (100%) owned by Bossen, and K&S, a New Jersey corporation which upon information and belief was one hundred percent (100%) owned by Kobolak, would merge and operate under BAM; (b) Kobolak would purchase a fifty percent (50%) interest in the newly merged entity from Bossen; and (c) Kobolak would purchase a fifty percent (50%) interest in the real property owned by the General Partnership. According to the letter of intent, the parties had agreed to formalize the intent of the merger in a paper agreement, but this did not take place.

8.      On or about September 28, 2006, Bossen, John P. Bossen and Kobolak entered into an Agreement for Sale of a Portion of Partnership Assets and Business ("Property Agreement"), which provided, *inter alia*, that Kobolak would purchase John P. Bossen's interest in the General Partnership for the sum of $223,842.00.

9.      On or about September 28, 2006, Bossen and Kobolak also agreed to the terms of the merger of BAM and K&S ("Merger Agreement").  Bossen and Kobolak agreed to the terms of the merger of BAM and K&S which included, inter alia, the following:

    a.  BAM and K&S would merge their resources and operate as BAM;

    b.  BAM acquired a one hundred percent (100%) ownership interest in K&S, including the name and trademark rights associated therewith;

    c.  Kobolak would purchase a fifty percent (50%) interest in BAM;

    d.  At closing on the merger, Kobolak would remit payment to Bossen in the amount of $200,000.00; and

    e.  Upon completion of the merger, Kobolak agreed that BAM would execute a promissory note to Bossen in the principal amount of $1 Million.

10.     The intention of the merger was for BAM to provide the infrastructure for the combined entities, and K&S would supply sales.

11.     In addition, since K&S was a smaller entity and brought far less in terms of monetary value to the merger, the parties agreed to execute a Corporate Promissory Note from BAM to Bossen in the amount of $1 million.  This Promissory Note remains open and unpaid.

**B. The Financing**

12.     As part of these Property Agreement and Merger Agreements, Bossen and Kobolak agreed to refinance the debt on the Property and the BAM business line of credit so that the parties could start the combined business with an equal capital account.

13.     On or about September 28, 2006, closing on the refinance of the General Partnership and the BAM line of credit took place and the parties effectuated the Merger Agreement.

14.     At the time of closing, there was a shortage of funds in the amount of $84,979.71 which was necessary to complete the transaction.  Kobolak was responsible for payment of one-half that amount, but failed to bring the necessary funds to closing to satisfy this shortage.

15.     As a result of Kobolak's failure to have sufficient funds to complete the refinancing, Bossen paid the entirety of this monetary shortfall with his own personal funds based upon the understanding that Kobolak, individually and not thru K&S proceeds of existing receivables, would reimburse Bossen at a later date.

16.     Despite due demand, Kobolak has failed and/or refused and continues to fail and/or refuse to reimburse Bossen for Kobolak's financial obligations with respect to this transaction.

17.     Kobolak remains liable to Bossen for one-half of this amount, or $42,489.85 plus interest and costs accruing from the date of closing.

## C. Post-Closing Operational Costs

18.     Bossen also supplied all of the start-up capital for the combined business.

19.     In addition to not having any funds to satisfy his portion of the closing shortfall, Kobolak also did not have any funds to contribute towards the start-up operating costs of the newly merged BAM.

20.     To ensure that the business could satisfy its business obligations, Bossen loaned the balance of his proceeds from closing, $138,962.29, to BAM to fund the operations of the combined businesses.  This loan was subsequently repaid by BAM.

21.     Kobolak contributed no capital towards the merger.  In contrast, Bossen contributed $223,842.00 towards the closing and start-up costs.

22.     At that time of the merger, BAM owned ninety-five percent (95%) of the equipment currently utilized by the combined entities, plus over $2 million in inventory consisting of raw lumber and moldings and completed work in progress.

23.     As part of the Merger Agreement, Kobolak had agreed to remit payment of cash to Bossen as part of his agreement to acquire an interest in BAM in the amount of approximately $200,000.00, move K&S's existing jobs under the

auspices of reorganized BAM, and develop new sales.  K&S did not satisfy its obligations under the Merger Agreement.

24.    At the time of the merger, K&S transferred initial client deposits of only $110,446.47.  These deposits were for jobs that had not yet been completed.

25.    Bossen's consent to enter into the Merger Agreement was based upon Kobolak's representation that his company had a significant amount of jobs that it had accepted and that the proceeds and profits from those jobs would be transferred to BAM.  However, this representation was not true.  The proceeds from these pre-merger jobs were used to satisfy the pre-merger bills of K&S, pay pre-merger salaries of K&S, pay pre-merger governance and administration of K&S, pay for expenses related to those jobs, and pay for K&S's moving expenses.

26.    After payment of these expenses, the value of jobs brought to the merged BAM was negligible.  Thus, without payment of the agreed-upon price of $200,000.00, Kobolak brought no value to the merger.

**D. Kobolak's Breach of Fiduciary Obligations**

27.    Once K&S was merged with BAM, Kobolak was appointed to the Board of Directors and made an officer of the newly merged BAM and implicitly accepted all of the fiduciary obligations that went along with these positions.

28.    Notwithstanding his acceptance of the merger and appointment as an officer and director of BAM, Kobolak failed and/or refused to meet his contractual

obligations under the Merger Agreement by remitting payment of $200,000.00 to Bossen.

29.     In addition to misrepresenting the value of K&S's pre-merger jobs and failing to remit payment to Bossen, Kobolak absconded with assets owned by BAM by virtue of the Merger Agreement.

30.     Prior to the merger, BAM and K&S operated at separate locations. Because BAM had already developed the infrastructure with high end woodworking equipment and a customized ventilation and dust collection system, it was agreed that K&S would cease its operations and move into BAM's facilities at the Property.

31.     Upon information and belief, after completing the merger and moving into BAM's facilities, K&S sold its business location and equipment.  Despite having merged their assets, Kobolak kept the proceeds of such sale(s) for himself and did not remit these funds to BAM as required pursuant to the merger.

32.     Moreover, as a result of the merger, a number of outstanding obligations to K&S were now due to BAM.  Nevertheless, Kobolak unilaterally forgave certain debts without the advice or consent of Bossen.

33.     As a result of the foregoing, BAM is entitled to an accounting of K&S's sale of equipment and accounts.

**E. Business Structure and Unilateral Dissolution of Merged BAM**

34.    At the time of the merger, BAM maintained a business of manufacturing and selling high-end wood moldings, architectural millwork and related products.   K&S constructed custom cabinetry and architectural millwork items.

35.    It became the understanding of the parties that Bossen would operate what was the old BAM as the "Bossen Division" and Kobolak would fulfill his responsibilities under the title of the "Kobolak Division."   Nevertheless, both entities operated as one combined corporation with shared assets and expenses.

36.    During the four (4) years following the merger, Kobolak failed to operate the Kobolak Division in a good and workmanlike manner which exposed BAM to significant liability.

37.    During the four (4) years following the merger, Kobolak failed to maintain a quality of work commiserate with that of BAM, which included numerous client complaints regarding work quality.

38.    This failure to maintain the BAM quality of work has damaged the BAM brand and image with its customers.

39.    During the four years following the merger, Kobolak did not comply with OSHA laws and regulations governing workplace safety, including but not limited to, requiring his employees to wear safety goggles and headphones,

properly instructing his employees regarding the appropriate methods of using tools and equipment owned by the corporation, and failing to maintain the facility in accordance with local and New Jersey state fire codes.

40.   In March, 2010, after extensive discussions on the operations of the company, Kobolak unilaterally and without the consent of Bossen opted to bifurcate the Kobolak Division from BAM.  Since that time, Kobolak has operated as Kobolak & Sons, Inc., an entity wholly-owned by BAM pursuant to the Merger Agreement, without the consent of BAM and/or Bossen.   In operating K&S, Kobolak has utilized assets of BAM, including BAM's trademark rights in and to the name Kobolak & Sons, Inc. which was acquired by BAM in the merger.

41.   Following the unilateral dissolution of the corporation, Kobolak interfered with the contractual relationships of BAM by directing customers of BAM to K&S.  Since that time, it has collected proceeds of sales that were contracted for through BAM, including one job valued in excess of $1 million referred to BAM by John P. Bossen.

42.   Since the unilateral dissolution of the corporation by Kobolak, Kobolak has interfered with the day-to-day operations of BAM by utilizing tools equipment wholly-owned by BAM without the consent of BAM, its officers, directors, or managers.

**COUNT ONE**
**(Trademark Infringement – All Defendants)**

43.     Plaintiffs repeat and reallege each of the allegations contained in the preceding paragraphs as if fully set forth at length herein.

44.     Defendants' wrongful use of the name Kobolak & Sons comprises an infringement of BAM's common law trademark "Kobolak & Sons" and is likely to cause confusion, mistake and deception of the public as to the identity and origin of BAM's goods, causing irreparable harm to BAM for which there is no remedy at law.

45.     By reason of the foregoing acts, K&S is liable to BAM for trademark infringement under 15 U.S.C. § 1114.

**COUNT TWO**
**(Unfair Competition Under 15 U.S.C. § 1125(a) – All Defendants)**

46.     Plaintiffs repeat and reallege each of the allegations contained in the preceding paragraphs as if fully set forth at length herein.

47.     Defendants knowingly and willfully have used and continue to use the name, Kobolak & Sons, which is likely to cause confusion, and has caused confusion, in the relevant marketplace, with BAM's Mark, in the State of New Jersey, and across numerous other states where BAM and Defendants conduct business.

48.     Defendants have solicited business using the name Kobolak & Sons despite its knowledge that BAM owns and controls the lawful use of BAM's Mark, Kobolak & Sons.

49.     These acts by Defendants constitute unfair competition in violation of § 43(a) of the Lanham Act, 15 U.S.C. 1125(a).

50.     As a result of Defendants' actions, BAM has suffered injury, including irreparable injury, and damages, including lost profits, reasonable royalties, and other damages as set forth herein.

## COUNT THREE
### (False Designation of origin Under 15 U.S.C. § 1125(a) – All Defendants)

51.     Plaintiffs repeat and reallege each of the allegations contained in the preceding paragraphs as if fully set forth at length herein.

52.     As a result of BAM's widespread use of BAM's Mark, BAM's Mark has achieved substantial goodwill, recognition and reputation throughout the United States.

53.     Defendants' unauthorized use of the name Kobolak & Sons constitutes use in commerce of a word, term, name, symbol, or device or a combination thereof, constituting a false designation of origin, a false and misleading deception, and a false and misleading representation that is likely to cause confusion, mistake, or deception as to the affiliation, connection or association of Defendants with BAM, and further is likely to cause confusion,

mistake or deception as to the origin, sponsorship or approval by BAM of Defendants' use of the name and their website.

54.    These acts by the Defendants constitute a violation of § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

55.    As a result of Defendants' actions, BAM has suffered injury, including irreparable injury, and damages, including lost profits, reasonable royalties, and other damages as set forth herein.

## COUNT FOUR
### (Cybersquatting Under 15 U.S.C. § 1125(d) – All Defendants)

56.    Plaintiffs repeat and reallege each of the allegations contained in the preceding paragraphs as if fully set forth at length herein.

57.    BAM's Mark is distinctive as defined by 15 U.S.C. § 1125.

58.    Defendants' domain name for its web site is, respectively, substantially identical to and indistinguishable from, Plaintiff's Mark, and therefore, Defendants' domain names www.kobolakandsoncabinetry.com and www.kobolak.com (the "Domains") are confusingly similar to Plaintiff's Mark under 15 U.S.C. § 1125(d)(1)(A)(ii)(I).

59.    Defendants' registration and use of the Domain names violate the Lanham Act's Anti-cybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d).

60.    Defendants' actions were conducted in bad faith and designed to profit from use of BAM's Mark.

61.     Defendants have no rights or legitimate interest in the Domains, and Defendants have no non-bad faith connection with the Domains, as Defendants' name itself was adopted in bad faith.

62.     Defendants have and intended to improperly divert internet customers from BAM's web site to Defendants' website at the Domains.

63.     Defendants' actions harm the goodwill of BAM, tarnish BAM's reputation and Mark, and create a likelihood of confusion as to the source, sponsorship, affiliation and endorsement of Defendants' web site by BAM.

64.     By virtue of these acts by the Defendants, BAM has suffered, and will continue to suffer, damages and irreparable harm unless Defendants are preliminarily and permanently enjoined by this Court from using their domain names to infringe Plaintiff's Mark, and are ordered to transfer ownership of the Domains, as well as any others that may be discovered to be similarly infringing to Plaintiff.

**COUNT FIVE**
**(Trademark Infringement Under New Jersey Common Law– All Defendants)**

65.     Plaintiffs repeat and reallege each of the allegations contained in the preceding paragraphs as if fully set forth at length herein.

66.     BAM's Mark is distinctive by virtue of inherent distinctiveness and/or the acquired distinctiveness in the Mark, through BAM's efforts of promoting its goodwill and reputation in the relevant marketplace.

67.     Defendants knowingly and willfully have used and continue to use the name, Kobolak & Sons, which is likely to cause confusion, and has caused confusion, in the relevant marketplace, with BAM's Mark, in the State of New Jersey, and across numerous other states where BAM and Defendants conduct business.

68.     The Defendants will, if not preliminary and permanently enjoined by the Court, continue its acts of trademark infringement as defined by the common laws of New Jersey, thereby deceiving the public, and causing BAM immediate and irreparable harm, damage and injury.

## COUNT SIX
### (Unfair Competition Under New Jersey Common Law– All Defendants)

69.     Plaintiffs repeat and reallege each of the allegations contained in the preceding paragraphs as if fully set forth at length herein.

70.     The aforementioned collective acts of the Defendants constitute unfair competition and unfair business practices contrary to the common laws of New Jersey.

71.     The Defendants will, if not preliminary and permanently enjoined by the Court, continue its acts of unfair competition as defined by the common laws of New Jersey, thereby deceiving the public, and causing BAM immediate and irreparable harm, damage and injury.

72.    As a result of the Defendants' collective actions, BAM has suffered injury, including irreparable injury, and damages, including lost profits, reasonable royalties, and other damages as set forth herein.

## COUNT SEVEN
### (Tortious Interference with Economic Advantage– All Defendants)

73.    Plaintiffs repeat and reallege each of the allegations contained in the preceding paragraphs as if fully set forth at length herein.

74.    BAM has a reasonable expectation of an economic advantage for any person seeking to do business with BAM, and relies upon laws which prevent malicious and intentional actions by a competitor attempting to confuse such would-be customers/clients into doing business with them rather than BAM.

75.    Upon information and belief, Defendants have knowingly and intentionally misled consumers of BAM into falsely believing Defendants are affiliated with BAM, and that their separate businesses are one entity, by virtue of the knowing use of a confusingly similar brand name.

76.    The Defendants' collective actions were committed with malice, willfulness and the intent to interfere with BAM's expectation to do business with persons seeking to do business with BAM, without reasonable and lawful justification or excuse.

77.     But for the Defendants' collective actions, BAM had more than a reasonable expectation that every prospective consumer who showed interest in seeking products from BAM would have paid BAM for such products.

78.     The Defendants' collective actions transgress generally accepted standards of common morality and law.

79.     The Defendants will, if not preliminary and permanently enjoined by the Court, continue to tortuously interfere with BAM's prospective economic advantage, and causing BAM immediate and irreparable harm, damage and injury.

80.     As a result of the Defendants' collective actions, BAM has suffered injury, including irreparable injury, and damages, including lost profits, reasonable royalties, and other damages as set forth herein.

## COUNT EIGHT
### (Misappropriation and Conversion– All Defendants)

81.     Plaintiffs repeat and reallege each of the allegations contained in the preceding paragraphs as if fully set forth at length herein.

82.     Since the unilateral dissolution of the merger by Defendants, Defendants have improperly utilized corporate assets of BAM.

83.     Since the unilateral dissolution of the merger by Defendants, Defendants have diverted customers and orders from BAM to K&S.

84.     Defendants' actions constitute misappropriation and conversion of corporate funds, to the detriment of BAM.

## COUNT NINE
### (Injury to Business Reputation – All Defendants)

85.     Plaintiffs repeat and reallege each of the allegations contained in the preceding paragraphs as if fully set forth at length herein.

86.     BAM alleges that Defendants' wrongful use of BAM's trademark inures to and creates a likelihood of injury to BAM's business reputation because persons encountering BAM and its products and services will believe that BAM is affiliated with or related to or has the approval of Defendants, and any adverse reaction by the public to Defendants and the quality of its products and the nature of its business will injure the business reputation of BAM and the goodwill that it enjoys in connection with its mark Kobolak & Sons.

## COUNT TEN
### (Breach of Contract - Kobolak)

87.     Plaintiffs repeat and reallege each of the allegations contained in the preceding paragraphs as if fully set forth at length herein.

88.     Kobolak has failed to make certain payments to Bossen which are due and owing under the terms of the Property Agreement and Merger Agreement.

89.     Due to Kobolak's defaults under the Property Agreement and Merger Agreement, all obligations due thereunder, including all accrued interest and costs, are immediately due and payable to Bossen, and Kobolak is indebted to Bossen for

all amounts due or to become due under the Property Agreement and Merger Agreement.

90.    Bossen has complied with all the terms and provisions of the Property Agreement and Merger Agreement.

91.    Pursuant to the terms of the Property Agreement and Merger Agreement, Bossen is entitled to all sums due and owing under the Property Agreement and Merger Agreement.

92.    Therefore, pursuant to the Loan Documents, Kobolak is indebted to Bossen in an amount not less than $253,989.32, plus all interest, costs, attorneys' fees and charges due or to become due under the Property Agreement and Merger Agreement.

93.    Bossen shall not be deemed to have waived, altered, released or changed the election hereinafter made by reason of the payment after the date of the commencement of this action of any or all of the defaults mentioned herein, and such election shall continue to remain in effect until the costs and disbursements of this action, and any and all future defaults under the Property Agreement and Merger Agreement, and occurring prior to the discontinuance of this action are fully paid.

## COUNT ELEVEN
### (Breach of Fiduciary Duties - Kobolak)

94.     Plaintiffs repeat and reallege each of the allegations contained in the preceding paragraphs as if fully set forth at length herein.

95.     Under applicable New Jersey law, directors and members of any committee designated by the board shall discharge their duties in good faith and with that degree of diligence, care and skill which ordinarily prudent people would exercise under similar circumstances in like positions.

96.     Kobolak has failed to satisfy his fiduciary obligations to BAM.

97.     Since there has been no formal separation agreement, Kobolak has been and remains a fifty percent (50%) shareholder and officer in BAM.

98.     Despite this role, Kobolak has withheld corporate profits for his own use and benefit; he has refused to share financial records since unilaterally bifurcating K&S from BAM; he has utilized the equipment of BAM to earn such profits without paying fair rental value for same; he has utilized BAM inventory to earn profits; he has utilized BAM's sample products to solicit competitors of BAM to supply products for K&S jobs; and he has forgiven debts of its customers without the advice and/or consent of BAM.

99.     Kobolak has failed to fulfill his fiduciary duties to BAM and remains liable for all lost profits due to Kobolak's breach of such fiduciary duties.

## COUNT TWELVE
### (Shareholder Oppression – Kobolak)

100.   Plaintiffs repeat and reallege each of the allegations contained in the preceding paragraphs as if fully set forth at length herein.

101.   Since September 28, 2006, Kobolak, in his capacity as shareholder, director and officer, has seized control of and mismanaged BAM, abused his authority, and acted oppressively and unfairly toward Bossen.

102.   Over the same period of time, Bossen's rights and expectations as a shareholder, director and officer of BAM have been denied.

103.   Further, Bossen's reasonable expectation of meaningful participation in the management of BAM has been frustrated by Kobolak's deliberate, oppressive conduct.

104.   Bossen seeks and is entitled to the protection afforded by N.J.S.A. 14A:12-7.

## COUNT THIRTEEN
### (Breach of Good Faith and Fair Dealing – Kobolak)

105.   Plaintiffs repeat and reallege each of the allegations contained in the preceding paragraphs as if fully set forth at length herein.

106.   Bossen had an expectation that Kobolak would contribute all funds necessary to complete the merger of BAM and K&S.

107.   Bossen also had an expectation that the Kobolak would perform his duties in compliance with the Property Agreement and Merger Agreement in a timely fashion.

108.   Kobolak acted in bad faith by failing to contribute funds in accordance with the Property Agreement and Merger Agreement, for misrepresenting the value of jobs to be transferred to the merged BAM, and for diverting assets of K&S from the merged BAM.  Plaintiff's actions were wanton and willful and without privilege or right.

109.   Kobolak breached the covenant of good faith and fair dealing implied in every contract entered into under New Jersey law.

110.   As a result of Kobolak's breach of good faith and fair dealing, Bossen has suffered damages to his loss and detriment.

## COUNT FOURTEEN
### (Negligence – Kobolak)

111.   Plaintiffs repeat and reallege each of the allegations contained in the preceding paragraphs as if fully set forth at length herein.

112.   It was Kobolak's duty to provide accurate information regarding the financial condition of K&S prior to the merger.

113.   Kobolak, acting through its agents, officers, servants, representatives or employees, was negligent in providing inaccurate financial information regarding K&S.

114.   As a direct and proximate cause of Kobolak's negligence, Bossen did not have accurate information on which to base a decision to regarding the merger of BAM and K&S.

115.   As a direct and proximate cause of Kobolak's negligence, Bossen sustained damages.  Due to Kobolak's negligence and Kobolak's ensuing failure to perform under the Property Agreement and Merger Agreement, Bossen expended significant additional personal funds to complete the transaction.

### COUNT FIFTEEN
### (Fraud/Misrepresentation – Kobolak)

116.   Plaintiffs repeat and reallege each of the allegations contained in the preceding paragraphs as if fully set forth at length herein.

117.   Bossen entered into the Property Agreement and the Merger Agreement with the understanding that K&S was a financially viable entity with significant assets necessary to make the transaction viable for BAM and with the understanding that Kobolak had sufficient liquid assets to complete the transaction.

118.   Bossen expected that Kobolak would remit payment of $200,000.00 in satisfaction of his obligations under the Merger Agreement.

119.   Per the Property Agreement and Merger Agreement, Bossen expected that Kobolak would have sufficient assets to complete the refinance and to contribute towards the operating capital of BAM.

120.   Kobolak misrepresented his ability to satisfy his contractual obligations and the misrepresented the financial viability of K&S.

121.   Kobolak intended that Bossen rely on his misrepresentations and/or omissions to his detriment.

122.   Kobolak's conduct is such to justify an award of punitive damages.

123.   As a direct and proximate result of Kobolak's fraud and misrepresentation, Bossen sustained damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs demand judgment against each of the Defendants as follows:

1.     A permanent injunction restraining Defendants, their respective officers, agents, servants, employees, attorneys, and those in active concert or participation with them, or any of them who receive actual notice of the order by personal service or otherwise, from:

A. From using BAM's Mark or any colorable imitation thereof, or any other mark, the use of which is likely to cause confusion, or cause mistake, or to deceive including but not limited to KOBOLAK & SONS or variants thereof;

B. From using, in connection with the offering for sale or sale of any services and/or products, any false designation, description or

representation stating or implying that BAM is the origin of, has authorized, or is connected with such services or goods;

C.   From displaying any materials using the phrase KOBOLAK & SONS or any colorable imitation thereof, or any other mark, the use of which is likely to cause confusion, or cause mistake, or to deceive in relation to BAM's Mark in or on any property, real or otherwise;

D.   Take all steps necessary to remove the name KOBOLAK & SONS or any other name, mark or symbol, likely to cause confusion with BAM's Marks, from any brochures, advertisements, or any other materials printed or to be printed or distributed (including internet distribution); and

E.   Transfer the domain names www.kobolak.com and www.kobolakandsoncabinetry.com, as well as any others that may be discovered to be similarly infringing, to BAM.

2.      The issuance of a temporary restraining order and preliminary and permanent injunction, restraining Plaintiff from dissipating and converting to his own use corporate profits of BAM and/or K&S, restraining defendant from utilizing corporate funds to pay his personal expenses, and restraining defendant from utilizing corporate funds for extraordinary corporate expenses, without Bossen's written consent;

25

3.      Compensatory damages, awarding Plaintiffs corporate profits due and owing equal to those taken by plaintiff since April 1, 2010, and such other compensatory damages as are necessary to make Bossen whole;

4.      An order requiring Kobolak to return his stock in BAM;

5.      An order requiring Defendants to repay BAM for all moneys improperly removed from BAM and disbursed to Defendants for their personal benefit;

6.      An order requiring a full accounting by Bossen of K&S's expenses and revenues for the period April 1, 2010 to the present;

7.      Damages to be paid to Plaintiffs by Defendants as follows:

   A. Actual, compensatory, punitive, consequential, incidental, nominal and expectation damages;

   B. Defendants' profits made as a result of Defendants' wrongful actions;

   C. Exemplary and/or treble damages;

   D. Interest, attorney's fees and costs associated herewith;

   E. An award of prejudgment and post-judgment interest and costs of suit;

   F. An award of punitive damages in an amount to be determined by the Court for Defendant's deliberate and willful acts;

G.  An award of actual and compensatory damages in an amount not presently known, but to be computed during the pendency of this action; and

H.  An award of any such other and further relief as this Court deems just and equitable;

I.  Pre-judgment and post-judgment interest;

J.  Reasonable attorneys' fees and costs incurred by plaintiff in this action; and

K.  Such other and further relief as the Court may deem just and proper.

BERGMANN & GOOD, LLC
Attorneys for Plaintiffs, Bossen
Architectural Millwork, Inc. and Joseph
Bossen


BY:   /s/ Scott J. Good
        SCOTT J. GOOD
76 East Euclid Avenue, Suite 101
Haddonfield, New Jersey 08033
Telephone: (888) 814-4100
Facsimile: (609) 385-1444

Dated: July 8, 2014

27

VERIFICATION

I, JOSEPH BOSSEN, an officer of Bossen Architectural Millwork, Inc. as well as an individual Plaintiff in the foregoing action, have read the foregoing Complaint and declare under penalty of perjury that the foregoing is true and correct pursuant to 28 U.S.C.A. § 1746.


_____*/s/ Joseph Bossen*_____
Joseph Bossen, Individually and as an
Officer of Bossen Architectural Millwork, Inc.