**HAGNER & ZOHLMAN, LLC**
57 Kresson Road
Cherry Hill, New Jersey 08034
(856) 663-9090
Attorneys for the Defendants, Kobolak & Son, Inc., i/p/a Kobolak & Sons, Inc., and Tibor Kobolak

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

|  |  |
|---|---|
| BOSSEN ARCHITECTURAL MILLWORK, INC., et al., | CIVIL ACTION NO. 1:14-cv-04294 |
| Plaintiffs, | |
| v. | |
| KOBOLAK & SON, INC., et al., | |
| Defendants. | |

## BRIEF IN SUPPORT OF DEFENDANTS'
## APPLICATION FOR PRELIMINARY INJUNCTION

On the Brief:

Thomas A. Hagner, Esquire

# TABLE OF CONTENTS

I.   PRELIMINARY STATEMENT ............................................................................4

I.   PROCEDURAL HISTORY...............................................................................7

II.  STATEMENT OF FACTS.................................................................................8

III. ARGUMENT.....................................................................................................18

    A.  Defendants Are Likely To Succeed On The Merits Of Their Breach of Fiduciary Duty Claim. ..................................................................................................19

    B.  Defendants Will Suffer Irreparable Harm Without Injunctive Relief. .....................21

    C.  Granting Injunctive Relief Will Not Cause Plaintiffs To Suffer A Greater Harm. ..22

    D.  The Public Interest Factors Favor Granting Injunctive Relief. ................................23

    E.  Plaintiffs Are Creating a Continuing Nuisance Which Requires Abatement Through Injunctive Relief...................................................................................23

        1)  Unreasonable Interference With the Use and Enjoyment of Land is a Private Nuisance...............................................................................................24

        2)  Injunctive Relief is an Appropriate Remedy for Abating a Continuing Private Nuisance...............................................................................................25

IV.  CONCLUSION .................................................................................................26

## TABLE OF AUTHORITIES

### Cases

Antonik v. Chamberlain, 81 Ohio App. 465, 78 N.E. 2d 752, 759 (1947)...................................24

AT & T Co. v. Winback & Conserve Program, Inc., 42 F.3d 1421, 1427 n.8 (3d Cir.1994) .......22

ECRI v. McGraw-Hill, Inc., 809 F.2d 223, 226 (3d Cir. 1987) ....................................................21

Galasso v. Del Guercio, 114 N.J. Super. 327, 331-32 (Ch. Div. 1971).........................................23

Grand Street Artists v. General Elec. Co., 28 F. Supp. 2d 291 (D.N.J. 1998) ..............................19

Hirschberg v. Flusser, 87 N.J. Eq. 588 (Ch. Div. 1917)................................................................18

Hoffman-LaRoche, Inc. v. Weissbard, 11 N.J. 541, 551 (1953) ....................................................18

Instant Air Freight Co. v. C.F. Air Freight, Inc., 882 F.2d 797, 801 (3d Cir. 1989).....................21

Kos Pharms., Inc. v. Andrx Corp., 369 F.3d 700, 708 (3d Cir. 2004)......................................18, 22

McCullough v. Hartpence, et al., 141 N.J. Eq. 499, 503 (Ch. Div. 1948).....................................18

McVoy v. Baumann, et al., 93 N.J. Eq. 638643 (Ch. Div. 1922).....................................................21

Notch View Associates v. Smith, 260 N.J. Super. 190 (Law Div. 1992)........................................19

Novartis Consumer Health, Inc. v. Johnson & Johnson/Merck Consumer Pharm. Co., 290 F.3d
    578, 586 (3d Cir. 2002)..........................................................................................................18, 21

Opticians Ass'n v. Indep. Opticians, 920 F.2d 187, 195 (3d Cir. 1990) ........................................21

Pappan Enters., Inc. v. Hardee's Food Sys., Inc., 143 F.3d 800, 805 (3d Cir. 1998)....................21

Robbins v. Passaic National Bank and Trust Co., 109 N.J.L. 250, 160 A 418 (1932)..................19

Rose v. Chaikin, 187 N.J. Super. 210, 216 (Ch. Div. 1982).....................................................24, 25

Sans v. Ramsey Golf & Country Club, Inc., 29 N.J. 438, 448 (1959) .......................18, 23, 24, 25

Sheahan v. Upper Greenwood Lake Property Owners Association, Inc., 36 N.J. Super. 133, 136
    (App. Div. 1955).............................................................................................................................18

Sheppard v. Twp. of Frankford, 261 N.J. Super. 5, 9 (App. Div. 1992) ........................................25

### Statutes

N.J.S.A. 42:1A-11 ...........................................................................................................................19

N.J.S.A. 42:1A-24 ...........................................................................................................................19

N.J.S.A. 42:1A-25 .....................................................................................................................19, 20

### Rules

Fed. R. Civ. P. 65(a) ........................................................................................................................18

## I.   PRELIMINARY STATEMENT

This matter involves a dispute between two business partners.  Plaintiff John Bossen and Defendant Tibor Kobolak are equal partners in the Joseph H. Bossen and John P. Bossen General Partnership ("Real Estate Partnership") which owns the land and building known as 1818 Bannard Street, Cinnaminson, NJ ("Partnership Property").   They are also equal shareholders in Bossen Architectural Millwork, Inc. ("BAM") which operates out of the Partnership Property.  Mr. Kobolak is also the sole owner of Kobolak & Son, Inc., which also operates out of the Partnership Property.

This application is directed solely to Mr. Bossen's infringement of Mr. Kobolak's rights as a 50% co-partner of the Real Estate Partnership.  In response to Mr. Kobolak's withdrawal from BAM to pursue his business on his own, Mr. Bossen has retaliated by preventing him from using the majority of the space in the Partnership Property, while at the same time demanding that he contribute fifty percent (50%) towards the expenses associated Partnership Property.   Mr. Kobolak seeks relief because Mr. Bossen's unilateral usurpation of most of the Partnership Property space is causing substantial, albeit precisely unquantifiable, economic harm to him as the sole owner of his company, Kobolak & Son, Inc.

In 2006, Plaintiffs and Mr. Kobolak, individually, entered into certain agreements whereby Mr. Kobolak purchased a fifty percent (50%) interest in the Real Estate Partnership as well a fifty percent (50%) interest in BAM.  Despite assertions by Plaintiffs, no merger was ever contemplated between BAM and Kobolak & Son, Inc., nor was any merger agreement ever entered into and/or executed.  No merger documents exist, nor have any ever existed with respect to the parties to this dispute.

Following Mr. Kobolak's acquisition of his fifty percent (50%) interest in both BAM and the Real Estate Partnership, Mr. Kobolak moved his business operations into the Partnership Property and conducted them within BAM.  However, over the course of the next four (4) years, a number of business disputes occurred.  Both Mr. Kobolak and Mr. Bossen attempted to resolve the disputes which had arisen, but those attempts were unsuccessful.  Therefore, the two men began to discuss a business separation.  Ultimately, an agreement to separate was reached in March 2010.

Upon reaching an agreement to separate, both parties effectuated numerous steps towards the separation, but some issues were not immediately resolved.  Mr. Kobolak immediately began to operate his business separate and apart from Plaintiffs, but still remained in the Partnership Property.  Despite Mr. Bossen's promises of an intent to generate a comprehensive proposal for the business separation, he failed to produce any such proposal, and has delayed all attempts by Mr. Kobolak to resolve this matter.  Rather than negotiate in good faith, Mr. Bossen retaliated by monopolizing the majority of space owned by the Real Estate Partnership and has prevented Mr. Kobolak from his use and enjoyment of the vast majority of the premises – while at the same time demanding that he continue to contribute fifty percent (50%) toward the expenses of the Partnership Property, including mortgage and tax payments.

Currently, despite Mr. Kobolak's ownership interest in BAM, the Real Estate Partnership, and Real Estate Partnership owned property, Plaintiff is preventing Mr. Kobolak from utilizing office space, work space, and equipment which he is lawfully entitled to utilize. Plaintiffs' actions are having serious adverse effects on Mr. Kobolak's ability to properly and profitably operate his business. As a result, Mr. Kobolak and his business are suffering immediate and irreparable harms in the forms of loss of profits, loss of trade, and loss of good

will.  At the same time, Mr. Bossen is enjoying the use of a majority of the Partnership Property without accounting to his co-equal partner.

By way of this application, Defendant Tibor Kobolak seeks preliminary injunctive relief enjoining Bossen from interfering with the use and enjoyment of the Real Estate Partnership building and property to which Mr. Kobolak is entitled; and also enjoining the continuing private nuisance being caused by Mr. Bossen.  Specifically, Mr. Kobolak requests an Order enjoining Joseph Bossen, in his capacities as both a co-equal partner in the Real Estate Partnership as landlord, and, co-equal owner of BAM as tenant in the Partnership Building, to enter into a formal written lease agreement with both occupants of the Partnership Building, BAM and Kobolak & Son, Inc., at a uniform rental rate, and with an allocation of space as close to fifty percent (50%) as practicable for each tenant.

## II.   **PROCEDURAL HISTORY**

On July 8, 2014, Plaintiffs filed this action in the United States District Court, District of New Jersey, Camden Vicinage.  Thereafter, on August 21, 2014, Defendants made an application for an extension of time to Answer.  The following day, the Defendants' application was granted, and the Court Ordered an Answer be filed by September 11, 2014.  On September 10, 2014, Defendants filed an Answer and Counterclaim.  That same day, the Court entered an Order for a Scheduling Conference to occur on October 8, 2014.

The Defendant filed a Motion for Preliminary Injunctive Relief on September 30, 2014 which was set for November 3, 2014.  The Motion was withdrawn without prejudice at the Initial Scheduling Conference which took place on October 8, 2014 in order to permit the parties to explore settlement and to that end the Initial Scheduling Order directed both parties to submit written proposals by October 15, 2014.  The moving party submitted a detailed settlement proposal. Plaintiff failed to do so and, instead, on October 20, 2014 issued a letter indicating that Plaintiff wished to "proceed with the litigation."

### III.   STATEMENT OF FACTS

1.   Defendant fully incorporates the Declaration of Defendant, Tibor Kobolak, as if fully set forth herein.

2.   Defendant, Tibor Kobolak, ("Kobolak"), is a resident of the State of New Jersey residing at 106 Parry Road, Cinnaminson, NJ 08077.

3.   Defendant, Kobolak & Son, Inc., ("K&S"), is a New Jersey corporation with a principal place of business at 1818 Bannard Street, Cinnaminson, NJ 08077.  It is engaged in the design, fabrication and installation of fine custom cabinetry and architectural millwork. It is involved in both commercial and residential projects which include media, cabinetry, kitchens, bars, fireplace surrounds, studies and places of worship.

4.   Plaintiff, Joseph Bossen, ("Bossen"), is a resident of the State of New Jersey residing at 417 Linden Avenue, Riverton, NJ.

5.   Plaintiff, Bossen Architectural Millwork, Inc., ("BAM"), is a New Jersey corporation with a principal place of business at 1818 Bannard Street, Cinnaminson, NJ 08077.

6.   The Joseph H. Bossen and John P. Bossen General Partnership is a New Jersey General Partnership (the "Real Estate Partnership") owned equally by Joseph H. Bossen and Tibor Kobolak. The Real Estate Partnership owns certain land and building known as 1818 Bannard Street, Cinnaminson, NJ 08077 (the "Partnership property").

7.   BAM is owned equally by Joseph H. Bossen and Tibor Kobolak.

8.   As of September, 2006, both the Real Estate Partnership and the Corporation were owned by Joseph H. Bossen and John P. Bossen.

9.  In 2006 Tibor Kobolak reached a mutual agreement with Joseph Bossen to acquire a fifty percent (50%) interest in BAM as well as a fifty percent (50%) interest in the Real Estate Partnership.

10. Accordingly, in September, 2006, pursuant to a formal written Agreement between Joseph H. Bossen, John P. Bossen and Tibor Kobolak, Mr. Kobolak paid to John P. Bossen the sum of $223,842.00 for all of his right, title and interest in and to the Real Estate Partnership.  (Exhibit A)

11. In or about September, 2006 Tibor Kobolak also acquired a fifty percent (50%) interest in BAM at which point he was also appointed as a member of the Board of Directors.

12. At the time and prior to September, 2006 BAM was engaged in the manufacturer of wood moldings and related products.   Mr. Kobolak had been engaged in the business of fine custom cabinetry and architectural millwork.

13. After Mr. Kobolak acquired an interest in BAM, he was responsible for the fine custom cabinetry and architectural millwork line of business; while Mr. Bossen continued with the wood molding manufacture and related products line of business.

14. The line of business for which Mr. Kobolak was responsible was informally known as "the Kobolak Division," while the line of business for which Mr. Bossen was primarily responsible was informally known as "the Bossen Division."

15. Mr. Kobolak contributed cash and equipment to the business, and Mr. Kobolak's credit and good standing with vendors allowed BAM to purchase goods on terms which were otherwise not available to BAM without Mr. Kobolak's assistance.

16. During the approximate four (4) year time period following Mr. Kobolak's acquisition of an interest in BAM, Bossen's business failed to meet revenue expectations and failed to

make the necessary adjustments to respond to the declining revenue. At the same time, Mr. Kobalak remained personally accountable for certain salary and non-salary Bossen division expenses.

17. During the course of the four (4) year period specified above, Mr. Bossen made numerous unilateral business decisions, including purchasing and installing a large "Bossen Architectural Millwork" sign; paving the parking lot; and re-paying himself, with interest, purported "loans" given to the business account.

18. In or around March 2010 after an extensive period of time had passed in which Mr. Kobolak and Mr. Bossen unsuccessfully attempted to resolve a number of significant Real Estate Partnership financial issues, discussions regarding ending the business relationship took place.

19. Upon reaching an agreement to separate, Mr. Bossen and Mr. Kobolak took many critical steps toward the goal of separation, but tabled others to be resolved later.

20. After the separation, Mr. Kobolak proceeded to operate his own business separate and apart from Mr. Bossen while remaining in the Partnership Property.

21. After the agreement to separate, Mr. Kobolak and Mr. Bossen, began taking steps in furtherance of the agreement, e.g. employees were divided; separate bank accounts were maintained; separate insurance policies were obtained; separate billing systems were implemented and, while the parties continued to operate at the same premises, the space was divided to some extent, although not fully, as that final consideration was left unresolved.

22.    During the separation discussions, Mr. Bossen stated that he intended to generate a comprehensive proposal encompassing all aspects of the business separation within two (2) weeks of the March 2010 meeting.

23.    To date, Mr. Bossen has never submitted any such proposal and, in fact, has delayed all attempts to resolve the matter despite numerous efforts on the part of Mr. Kobolak.

24.    A non-exclusive summary of significant business/financial issues that have never been resolved is as follows:

   a.    The use of space within the Building and the payment of rent consistent with actual space usage;

   b.    Usage of co-owned equipment and payment for the usage of the equipment consistent with actual usage;

   c.    Use agreements to address maintenance and upkeep expenses;

   d.    Payment of business loans;

   e.    Accounting for the payment of accounts receivable that accumulated prior to the April 2010 separation;

   f.    Accounting for inventory;

   g.    Vehicle ownership and expenses;

   h.    Ongoing Building maintenance;

   i.    Accounting for employees' salaries and benefits.

25.    Among the important unresolved business/financial issues resulting from the business separation is a resolution of a line of credit in the approximate amount of $200,000. Mr. Kobolak made repeated requests to Mr. Bossen to begin paying down the line of credit, but all such attempts were ignored until only recently at the insistence of the lender,

payments toward principle began to be made.  As a result, only interest payments had been made toward the outstanding balance.  Mr. Kobolak stands ready to make payments towards reducing the line of credit provided Bossen agrees to make equal payments, but thus far he has refused to do.

26.    With respect to the occupancy of the Partnership Property, while Mr. Kobolak pays fifty percent (50%) of the mortgage and fifty percent (50%) of all property related expenses, Mr. Bossen currently occupies almost two-thirds (2/3) of the shop work space and eighty-five percent (85%) of the office space.

27.    While Mr. Kobolak paid fifty percent (50%) of Joseph Bossen's salary, and fifty percent (50%) of the salaries of Bossen's clerical staff, Mr. Kobolak paid for one hundred percent (100%) of his own salary.

28.    Moreover, immediately after the agreed upon business separation, Mr. Bossen purchased over $30,000 of lumber charging it to the Real Estate Partnership.  However, those materials were intended solely for Mr. Bossen and Mr. Kobolak has never received revenue related to the sale of this inventory, yet, was responsible for fifty percent (50%) of its expense.

29.    Since March 2010, Mr. Bossen and Mr. Kobolak have barely communicated electing, instead, to communicate via Mr. Bossen's secretary/sister, Audrey Bossen.  While Mr. Bossen acknowledges e-mails, he refuses to address the issues presented.

30.    The most recent attempt to resolve the outstanding issues began on August 9, 2012 at which time a communication was issued to Mr. Bossen's counsel, Bruce Mendelsohn, Esq., a New York City attorney.

31.   The August 9, 2012 communication reconfirmed the agreement to separate as of April 1, 2010, and further confirmed that, despite protracted discussions, the separation has not been finalized and properly memorialized.

32.   A detailed separation proposal accompanied the August 9, 2012 communication which also invited a meeting in mid-September.

33.   Counsel's communication was ignored, necessitating a follow up communication on September 13, 2012.  The September 13, 2012 communication also conveyed that Mr. Bossen's half of the real estate taxes had not been paid for the year so that at the time, two quarters were delinquent and a third quarter would soon be due.  The communication reminded counsel for Mr. Bossen that the failure to pay real estate taxes probably represented a default under the business loan documents.

34.   The only response received was one dated September 17, 2012 which simply indicated that Mr. Bossen was, "[p]utting together a response to your client's proposal which I will forward to you.  We can set up a time to speak after you receive the response."

35.   However, three (3) more weeks passed without any such proposal which prompted another communication to Mr. Bossen's counsel requesting a response and further indicating that Mr. Kobolak wished to resolve the matter by year end.

36.   Another week went by with no response which necessitated another reminder dated October 15, 2012.

37.   In response to the third reminder, Mr. Bossen's counsel forwarded another brief communication again simply indicating that Mr. Bossen was "working on a counter proposal…"

13

38.   In response to the communication from Mr. Bossen's counsel, Mr. Kobolak's counsel responded the same day asking "any idea on timing?", and Mr. Bossen's counsel responded by stating "[n]ot sure of the timing but I will speak to Joe" on October 15, 2012.

39.   To date, Mr. Bossen has failed to provide a substantive response to any of the communications regarding separation, and has never produced any counter proposal or substantive response to the August 9, 2012 proposed Agreement that was forwarded on that date.

40.   On May 3, 2013 Tibor Kobolak initiated litigation in the Superior Court of New Jersey, Chancery Division, Burlington County, docket no. C-041-13 against Joseph Bossen ("State Court litigation") seeking relief based upon the violation of his rights as a partner in the Real Estate Partnership and a shareholder of the corporation.

41.   Approximately one year after the State Court litigation was initiated, the parties agreed to dismiss the suit without prejudice in order to permit further negotiations and discussions.

42.   As a result, a Stipulation of Dismissal without prejudice was filed on April 28, 2014.

43.   Thereafter, Plaintiff refused to engage in any meaningful discussions and just ten weeks later filed this lawsuit.

44.   Plaintiff continues to block prevent Mr. Kobolak from the use and enjoyment of the jointly owned premises to which he was entitled while demanding that he contribute fifty percent (50%) towards the mortgage, taxes and other expenses.

45.   Plaintiff continues to block Mr. Kobolak's access to needed space in the building and, when Mr. Kobolak indicated an intention to reduce his contribution towards expenses consistent with his percentage of use of the building, Plaintiff threatened to create a

disturbance in the workplace and threatened to prevent Mr. Kobolak from using equipment owned by the Corporation critical to Mr. Kobolak's business.

46.    Ultimately, Mr. Bossen stated a refusal to engage in any further discussions until Mr. Kobolak relinquished ownership of his fifty percent (50%) interest in the Corporation without any consideration whatsoever.

47.    Rather than engage in good faith negotiations, Mr. Bossen has retaliated by restricting Mr. Kobolak's use of co-owned equipment and has limited his use and enjoyment of the co-owned business property.

48.    Mr. Bossen's unilateral decision to limit Mr. Kobolak's work space has made it impossible for Mr. Kobolak to conduct business operations in a normal way, causing a loss of productivity and efficiency, as well as a limitation on Mr. Kobolak's ability to expand its business.

49.    The Kobolak manufacturing process involves the ordering and storing of materials with dimensions of between 4 and up to 12 feet; the cutting and assembly of those materials; the finishing of those materials; and the storage of finished product pending delivery. Due to Mr. Bossen's unilateral and illegal limitation of my use and enjoyment of the co-owned building, it is impossible for Kobolak & Son, Inc. to conduct business operations in a normal way. However, it would be impossible quantify precisely the loss of efficiency and productivity which this lack of space has caused. Therefore, Mr. Kobolak is requesting that the Court enjoin Mr. Bossen from the continued usurpation of property to my detriment.

50.    As one example of the economic harm caused by Mr. Bossen, there is no room to store materials so that they often cannot be ordered ahead of time causing delay, additional

expense, lack of productivity and a disruption in the normal manufacturing process. As another example, there is not enough work area space and, therefore, multiple jobs cannot be performed by employees simultaneously. Instead, employees need to wait for space to perform different jobs. In fact, Kobolak & Son would like to hire one or more additional employees in order to increase productivity but, under these circumstances, that is not possible because there is nowhere to put them.

51.    Mr. Bossen has also dictated a severe lack of office space. This severely compromises the ability to meet and speak with customers and prospective customers, meet with employees, and perform administrative tasks generally.

52.    Additionally, Mr. Bossen's unilateral mandate has resulted in no storage space for finished product. Therefore, routinely a finished product has been stored on and near work areas and becomes dirty and/or damaged resulting in further expense and/or delay.

53.    Aggravating the space limitation further, Mr. Bossen customarily leaves/stores his materials in or near the ingress/egress area of my space, which makes it even more difficult for Mr. Kobolak's business to operate. This has forced Mr. Kobolak to pay employees to move Mr. Bossen's materials just to get into and use my limited space.

54.    To summarize, this overall lack of space has generally resulted in the following:

    a.    The inability to work efficiently;

    b.    The utilization of extra labor time in order to prepare areas for work;

    c.    Increases in job costs;

    d.    The need to rent additional storage space to store completed jobs;

    e.    A lack of space capable of being dedicated for conferences and/or meetings with clients and customers;

16

    f.   The inability to stage projects through fabrication, which results in increased time spent on projects;

    g.   The inability to increase the number of employees to accommodate an increasing work load;

    h.   Work teams being required to work overtime to complete projects because they are unable to be positioned properly in the building or additional staff cannot be hired; and

    i.   Office duties must be performed out of the shop due to the lack of space for tasks and file storage.

55.    It would be impossible to precisely quantify the economic losses resulting from the loss of productivity, time and efficiency resulting from Mr. Bossen's actions.   It would be impossible to accurately quantify in dollars and cents the loss of productivity, time and efficiency of employees having to move materials in and out of the building; having to juggle time and materials within the limited work space; the loss of good will because there is insufficient area to conference and meet with clients; and the loss of good will of untimely deliveries of finished product and customers.

IV.   **ARGUMENT**

Federal Rule of Civil Procedure 65 permits the Court to enter an injunction upon notice to the adverse party. Fed. R. Civ. P. 65(a). A moving party is entitled to a preliminary injunction when it can demonstrate: (1) a likelihood of success on the merits; (2) that it will suffer irreparable harm if the injunction is denied; (3) that granting preliminary relief will not result in even greater harm to the nonmoving party; and (4) that the public interest favors such relief. Kos Pharms., Inc. v. Andrx Corp., 369 F.3d 700, 708 (3d Cir. 2004); see also Novartis Consumer Health, Inc. v. Johnson & Johnson/Merck Consumer Pharm. Co., 290 F.3d 578, 586 (3d Cir. 2002) (affirming a District Court's grant of a preliminary injunction).

Unreasonable interference(s) with the use and enjoyment of land is a private nuisance. Sans v. Ramsey Golf & Country Club, Inc., 29 N.J. 438, 448 (1959). "The remedy at law to resist the invasion of property rights by means of encroachments is inadequate." McCullough v. Hartpence, et al., 141 N.J. Eq. 499, 503 (Ch. Div. 1948) (*citing*, Hirschberg v. Flusser, 87 N.J. Eq. 588 (Ch. Div. 1917). Accordingly, injunctive relief is the appropriate remedy to abate a continuing nuisance. Ramsey Golf & Country Club, Inc., *supra*, 29 N.J. at 450.

"An injunction may issue 'to prevent an anticipated or threatened injury, either to protect against a repetition of unlawful conduct or to guard against reasonably apprehended misconduct or infringement of a legal right.'" Sheahan v. Upper Greenwood Lake Property Owners Association, Inc., 36 N.J. Super. 133, 136 (App. Div. 1955) (*quoting*, Hoffman-LaRoche, Inc. v. Weissbard, 11 N.J. 541, 551 (1953)).

**A.** **Defendants Are Likely To Succeed On The Merits Of Their Breach of Fiduciary Duty Claim.**

Granting a preliminary injunction in this case is proper because while it is undeniable that Mr. Kobolak is a co-equal partner in the Real Estate Partnership, the other co-equal partner, Joseph Bossen, is not only monopolizing the Real Estate Partnership property, but at the same time demanding that Mr. Kobolak continue to contribute 50% towards the expenses of that property. Mr. Bossen has clearly breached his fiduciary duty of loyalty to both the Real Estate Partnership, and also co-equal partner Mr. Kobolak by monopolizing the Partnership Property for his own benefit.

Property acquired by a partnership is partnership property, and not property of the partners individually. N.J.S.A. 42:1A-11; *see also*, Grand Street Artists v. General Elec. Co., 28 F. Supp. 2d 291 (D.N.J. 1998). A partner may not use Partnership property for private uses without sanction of his co-partners. Robbins v. Passaic National Bank and Trust Co., 109 N.J.L. 250, 160 A 418 (1932).

A partner has a duty of loyalty to both the Partnership and the other partner "to account to the Partnership and hold as trustee for it any property, profit, or benefit derived by the partner and the conduct … of the Partnership business were derived from a use by the partner of Partnership property…" N.J.S.A. 42:1A-24(b). A Partner who misappropriates Partnership opportunities may be held accountable for those profits. Notch View Associates v. Smith, 260 N.J. Super. 190 (Law Div. 1992). Monopolization, without accounting, of partnership property constitutes a breach of the duty of loyalty. N.J.S.A. 42:1A-24.

Both a Partnership and a partner may maintain an action against a partner for a violation of a duty to the Partnership which causes harm to the Partnership. N.J.S.A. 42:1A-25. "A partner may maintain an action against the Partnership or another partner for legal or equitable relief, with or without an accounting as to Partnership business" to protect the interests of the partner and/or enforce the partner's rights under the Uniform Partnership Law." N.J.S.A. 42:1A-25(b)(2)-(3).

Here, it is conceded that 1818 Bannard Street, Cinnaminson, New Jersey is owned by the Joseph H. Bossen and John P. Bossen General Partnership ("Real Estate Partnership") and, as such, it constitutes Partnership Property and not the property of the two partners. However, the Real Estate Partnership property constitutes not only the sole asset of the Partnership, but the sole business activity of the Partnership. Hence, in terms of the application of appropriate equitable principals, it is submitted that the appropriate perspective should be akin to that relating to two tenants in common. In other words, the fact that the two individuals have elected to assume ownership of 1818 Bannard Street, Cinnaminson, New Jersey through a General Partnership as opposed to a tenancy in common should not drastically alter the equitable relief available to the injured party. It certainly has little meaning to the two individuals on a practical, economic or emotional level.

Here, Mr. Kobolak individually owns fifty percent (50%) of the Real Estate Partnership. Mr. Kobolak acquired his fifty percent (50%) interest in the Real Estate Partnership in 2006 and since that time has remained an owner in equal part with Plaintiff Joseph Bossen. Mr. Bossen, however, is preventing Mr. Kobolak from utilizing and occupying portions of the Real Estate Partnership property which he is lawfully entitled to utilize and operate.

Accordingly, given the high likelihood of success of merits on his breach of fiduciary duty claim, Mr. Kobolak respectfully requests this Court to enter an Order enjoining Joseph Bossen, in his capacities as both a co-equal partner in the Real Estate Partnership as landlord, and, co-equal owner of BAM as tenant in the Partnership Building, to enter into a formal written lease agreement with both occupants of the Partnership Building, BAM and Kobolak & Son, Inc., at a uniform rental rate, and with an allocation of space as close to fifty percent (50%) as practicable for each tenant.

### B. Defendants Will Suffer Irreparable Harm Without Injunctive Relief.

Irreparable harm is "potential harm which cannot be redressed by a legal or an equitable remedy following a trial." Instant Air Freight Co. v. C.F. Air Freight, Inc., 882 F.2d 797, 801 (3d Cir. 1989). To establish irreparable harm, the party requesting relief must set forth a "clear showing of immediate irreparable injury." ECRI v. McGraw-Hill, Inc., 809 F.2d 223, 226 (3d Cir. 1987) (citations omitted). The harm "must be of a peculiar nature, so that compensation in money alone cannot atone for it." Id. (citations omitted). "Grounds for irreparable injury include loss of control of reputation, loss of trade, and loss of goodwill." Novartis, 290 F.3d at 596; see also, Pappan Enters., Inc. v. Hardee's Food Sys., Inc., 143 F.3d 800, 805 (3d Cir. 1998); Opticians Ass'n v. Indep. Opticians, 920 F.2d 187, 195 (3d Cir. 1990). Additionally, "[t]he jurisdiction to enforce performance is universal, not because of the real nature of the land, but because damages at law, which must be calculated upon the general money value of land, may not be a complete remedy to a purchase, to whom the land may have a peculiar and special value." McVoy v. Baumann, et al., 93 N.J. Eq. 638643 (Ch. Div. 1922).

Here, Mr. Bossen is preventing Mr. Kobolak, an equal partner, from using and enjoying the Real Estate Partnership Property. Plaintiffs' actions are preventing Mr. Kobolak from

engaging in his normal course of business, causing not only financial harm, but immediate and irreparable harm to Defendants' trade and reputation.

     Accordingly, Defendants respectfully request this Court enter an Order enjoining Plaintiffs from further misappropriating the Partnership Property to their own use and benefit, to the exclusion of co-equal partner Mr. Kobolak.

### C. Granting Injunctive Relief Will Not Cause Plaintiffs To Suffer A Greater Harm.

     The Court must also analyze whether the non-moving party will suffer irreparable harm if the preliminary injunction is granted. Kos Pharms. Inc., 369 F.3d at 727.  If the Court finds that such temporary relief may irreparably harm the non-movant, then it must "balance the hardships" to ensure that the injunction does not harm the non-movant more than a denial of the injunction would harm the moving party. Id. The injury a litigant might suffer if an injunction is granted should be discounted if there are any facts indicating that the injury was self-created. Id. at 728. Further, "[i]rreparable harm must be of a peculiar nature, so that compensation in money alone cannot atone for it." Id. at 727.  Thus, the Court should not consider financial damages when deciding whether to grant an injunction application. Id. at 728.

     Here, there is no discernable harm to Plaintiffs if this Court decides to grant the requested injunctive relief.  Mr. Kobolak and Mr. Bossen each own an equal fifty percent (50%) share in the Real Estate Partnership Property.  Therefore, enjoining Plaintiffs from furthering preventing Defendants from utilizing and accessing property and equipment to which they have a lawful right to access and utilize in no way, shape, or form causes any conceivable harm to the Plaintiffs.

**D.** **The Public Interest Factors Favor Granting Injunctive Relief.**

The public's interest always favors the issuance of a preliminary injunction where the movant establishes the existence of both a reasonable probability of success on the merits and irreparable harm. AT & T Co. v. Winback & Conserve Program, Inc., 42 F.3d 1421, 1427 n.8 (3d Cir.1994).

Here, Defendants have established the existence of both a reasonable probability of success on the merits as well as irreparable harm. Therefore, the issuance of Defendants' requested relief is in the public interest. Accordingly, Defendants respectfully request this Court enter an Order granting preliminary injunctive relief.

**E.** **Plaintiffs Are Creating a Continuing Nuisance Which Requires Abatement Through Injunctive Relief.**

While the instant dispute concerning the use and enjoyment of real estate is not strictly one between two tenants in common, it is respectfully submitted that given the circumstances of this dispute, it would be appropriate to view it as such. The two individuals, Joseph Bossen and Tibor Kobolak, are co-equal owners of the Real Estate Partnership which has as its sole activity, the ownership of the subject Partnership Property. The Real Estate Partnership owns no other assets and conducts no other business activities. Therefore, it is respectfully submitted that the mere fact that these two individuals have assumed ownership via a general partnership, should not materially affect the equitable remedies available to the injured partner.

Here, Mr. Bossen is creating an unreasonable interference with Mr. Kobolak's use and enjoyment of the Partnership Property, thus creating a nuisance which requires abatement through the issuance of injunctive relief.

**1) Unreasonable Interference With the Use and Enjoyment of Land is a Private Nuisance.**

As a general rule, a co-tenant may not exclude another co-tenant nor appropriate to his sole use any particular portion of the property where the co-tenants have an undivided interest. Galasso v. Del Guercio, 114 N.J. Super. 327, 331-32 (Ch. Div. 1971).

An unreasonable interference with the use and enjoyment of land is the "essence of a private nuisance." Ramsey Golf & Country Club, Inc., *supra*, 29 N.J. at 448. The process of adjudicating litigation of this type requires:

> "recognition of the reciprocal right of each owner to reasonable use, and a balancing of the conflicting interests. The utility of the defendant's conduct must be weighed against the quantum of harm to the plaintiff. The question is not simply whether a person is annoyed or disturbed, but whether the annoyance or disturbance arises from an unreasonable use of the neighbor's land or operation of his business."

Id. at 449; *see also*, Rose v. Chaikin, 187 N.J. Super. 210, 216 (Ch. Div. 1982). Stated otherwise:

> "The law of nuisance plys between two antithetical extremes: The principle that every person is entitled to use his property for any purpose that he sees fit, and the opposing principle that everyone is bound to use his property in such a manner as not to injure the property or rights of his neighbor."

Id.; *quoting*, Antonik v. Chamberlain, 81 Ohio App. 465, 78 N.E. 2d 752, 759 (1947). The pertinent inquiry is whether a party's activities "materially and unreasonably interfere" with the other party's comforts or existence, "according to the simple tastes and unaffected notions generally prevailing among plain people." Id.

Here, Plaintiffs are causing an unreasonable interference with Defendants' use and enjoyment of the Partnership Property. Mr. Bossen continuously prevents Mr. Kobolak and his employees from accessing portions of the building and the equipment thereon which is necessary for Mr. Kobolak to properly run his business. Mr. Bossen and Mr. Kobolak are both co-owners

with equal shares in the Real Estate Partnership and Partnership Property at issue, yet, Mr. Kobolak is unreasonably confined to utilizing only a small percentage of the work space and an even smaller percentage of the office space.

It is clear that Plaintiffs' activities "materially and unreasonably interfere" with Mr. Kobolak's comfort and existence in the co-owned property because Mr. Kobolak is paying for portions of the property and equipment thereon which he is being prevented from using and enjoying. Those portions of property and pieces of equipment are essential to Mr. Kobolak's successful running of his business. Clearly, when viewed "according to the simple tastes and unaffected notions generally prevailing among plain people", Mr. Kobolak's use and enjoyment of the property is being materially and unreasonably interfered with.

Moreover, the property is co-owned in equal parts, and both Mr. Bossen and Mr. Kobolak require use of their half of the building in order to properly run their respective businesses. Balancing the parties' interests is simple here, because each party is rightfully and lawfully entitled to use half of the building. Therefore, this Court should find that Plaintiffs' overuse of the Real Estate Partnership property constitutes a private nuisance.

### 2) Injunctive Relief is an Appropriate Remedy for Abating a Continuing Private Nuisance.

Injunctive relief is an appropriate remedy to abate a continuing nuisance. Ramsey Golf & Country Club, Inc., *supra*, 29 N.J. at 450; *see also*, Sheppard v. Twp. of Frankford, 261 N.J. Super. 5, 9 (App. Div. 1992); Chaikin, 187 N.J. Super. at 223.

Here, Plaintiffs are maintaining a private nuisance by materially and unreasonably interfering with Mr. Kobolak's use and enjoyment of the Partnership Property. Accordingly, because injunctive relief is an appropriate remedy for abating a continuing nuisance, and Defendants have satisfied the requirements necessary for injunctive relief, Defendants'

respectfully request this Court enter an Order granting preliminary injunctive relief against the Plaintiffs.

### V.   CONCLUSION

Despite Mr. Kobolak's co-equal ownership of the Real Estate Partnership, he is being prevented from utilizing the Real Estate Partnership's property by Mr. Bossen who has unilaterally chosen to monopolize the space.  Mr. Bossen's actions are causing irreparable harm to Mr. Kobolak and his business.  The moving party has satisfied all four requirements for preliminary injunctive relief and, accordingly, requests this Court to enter an Order granting his request for such relief.

As a practical matter, the Real Estate Partnership building cannot be simply divided in half.  It was not designed as a duplex or in the nature of "flex space."  It has certain unique characteristics which would prevent a precise 50/50 allocation.  In lieu of the equitable remedy of partition and sale, the moving party requests the Court to enjoin the parties to cause their separate entities to enter formal written Lease Agreements with the Real Estate Partnership with the space being allocated as closely as possible to equal parts and with the rent per square foot to be uniform.  The parties should be directed to immediately commence and negotiate in good faith for the allocation of the space which should be, as close as practically feasible be equal.


                                        **HAGNER & ZOHLMAN, LLC**
                                        Attorneys for Defendants



Dated: October 21, 2014                 BY: Thomas A. Hagner, Esq.


26